# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RICKY N. TROBAUGH, ) <br> ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> W.B. MELTON, et al. ) <br> ) <br>     Defendants. ) | Civil No. 2:15-CV-00005 <br> Judge Sharp |

## MEMORANDUM

Plaintiff Ricky N. Trobaugh brings claims under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. (Docket No. 1, pp. 6–10.) He also brings several state-law claims for alleged torts and violations of state statutes. (Docket No. 1, pp. 10–16.) Defendants Steve Hopper, Michael Agee, and W.B. Melton have filed two separate Motions for Summary Judgment (Docket Nos. 27, 30) as to all of Trobaugh's claims.

The Court will grant Defendants' Motions.

## BACKGROUND

This case arose after Plaintiff's 2014 arrest. The following facts are undisputed.[1]

Around 10 a.m. on February 17, 2014, Ricky Trobaugh was pulled over while driving in Overton County, Tennessee. (Docket No. 25, pp. 2–3.) The officer who stopped Trobaugh—an unnamed deputy with the Overton County Sherriff's Department, identified here only as "John Doe"—took Trobaugh's license back to his patrol car to run the license number through the National Crime Information Center ("NCIC") database. (Docket No. 25, p. 3.) The database

---

[1] Under Local Rule 56.01(g), Trobaugh's failure to respond indicates that he does not dispute Defendants' assertions of fact. M.D. Tenn. R. 56.01(g).

revealed that there was an outstanding warrant for Trobaugh's arrest in Smith County, Tennessee. (Docket No. 25, p. 3.) According to the warrant, Trobaugh had failed to appear for a show-cause hearing in an unrelated case involving Trobaugh and Citizen's Bank. (Docket No. 25, p. 3.)

The deputy told Trobaugh about the warrant, but Trobaugh insisted that it was a mistake. The deputy checked the warrant information again. When Trobaugh's Social Security information matched the information in the NCIC database, the deputy arrested Trobaugh and took him to the Overton County Jail. (Docket No. 25, p. 3.)

Trobaugh was booked at the Overton County Jail at 10:26 a.m. (Docket No. 31, p. 3.) The Overton County deputy then called a deputy from the Smith County Sheriff's Department to arrange Trobaugh's transfer. Trobaugh, who was "very cooperative" with Overton County deputies, was not placed in a jail cell while he waited for the Smith County deputy to arrive. (Docket No. 31, p. 3.) Instead, he sat in the jail's booking area. (Docket No. 31, p. 3.)

Trobaugh's sister arrived at the Overton County Jail to post bond for Trobaugh;[2] while there, she told Melton that Trobaugh had a "bad heart." (Docket No. 31, p. 5.) Melton concedes that Trobaugh was not allowed to take medications while in custody, but points out that Trobaugh never showed any need for medical treatment that morning. (Docket No. 31, p. 5.) Still, Overton County Jail personnel wrote the phone number for Trobaugh's sister on a piece of paper and told Trobaugh to keep the paper in his shirt pocket in case he had any medical problems that day. (Docket No. 31, p. 5.) Trobaugh did not complain about any medical issues while he waited in the Overton County Jail. (Docket No. 31, p. 6.)

---

[2] Melton told Trobaugh's sister that he could not accept bond for Smith County, so she would need to pay the bond at the Smith County Jail. (Docket No. 25, p. 4.)

Michael Agee, a deputy with the Smith County Sheriff's Department, came to the Overton County Jail at 11:40 a.m. (Docket No. 31, p. 3.) He then drove Trobaugh to the Smith County Jail, in Carthage, Tennessee, where they arrived around 12:50 p.m. (Docket No. 31, p. 3.) (Docket No. 31, p. 3.) Trobaugh's sister got to the Smith County Jail soon afterwards. She paid a $500 bond, and Trobaugh was released at 1:07 p.m. (Docket No. 31, p. 3; Docket No. 32, ex. E.) All told, Trobaugh had spent about three hours in custody.

Two days later, the Smith County Circuit Court Clerk's Office received a letter from Citizen's Bank, notifying the Circuit Court that the bank had settled its suit with Trobaugh. (Docket No. 28-3.) Soon after receiving the letter, the Circuit Court dismissed the charges against Trobaugh and refunded his $500 bond payment. (Docket No. 31, p. 5.)

Trobaugh filed this lawsuit in January 2015. (Docket No. 1.)

## LEGAL STANDARD

Summary judgment "is appropriate only where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " Whitfield v. Tennessee, 639 F.3d 253, 258 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(c)). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A court's function at the summary-judgment stage is simply to "determine whether there is a genuine issue for trial." Id. at 249. In doing so, a court must draw "all reasonable inferences in favor of the nonmoving party." Shreve v. Franklin Cty., 743 F.3d 126, 132 (6th Cir. 2014). See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

ANALYSIS

Trobaugh brings three claims under 42 U.S.C. § 1983. (Docket No. 1, pp. 6–10.) He also brings six state-law tort claims and one claim for recovery under state statutes. (Docket No. 1, pp. 11–16.)

**I. Federal Claims**

Hopper, Agee, and Melton argue that qualified immunity shields them from Trobaugh's federal claims. The Court agrees.

In civil suits for money damages, government officials are entitled to qualified immunity for discretionary acts that do "not violate clearly established [federal] statutory or constitutional law." Anderson v. Creighton, 483 U.S. 635, 638–39 (1987). Qualified immunity is rooted in the premise that government officials should be free from the costs, burdens, and distractions of litigating unsustainable claims. See Crawford-El v. Britton, 523 U.S. 574, 578–79 (1998). When presented with a qualified immunity argument in a § 1983 action, a court must first determine whether the plaintiff has shown that "constitutional violation[s] occurred." Lyons v. City of Xenia, 417 F.3d 565, 571–72 (6th 2005).

Trobaugh has failed to show that Defendants violated any of his constitutional rights when they arrested and detained him. Defendants are therefore entitled to qualified immunity, and their Motions will be granted on each of Trobaugh's federal claims.

**A. Trobaugh's Arrest**

Trobaugh claims that Defendants violated his Fourth Amendment rights by arresting him without a valid warrant. Aside from the Complaint itself, Trobaugh has not offered any evidence in support of this claim.

4

A § 1983 false-arrest claim requires a plaintiff to prove that the arresting officer lacked probable cause to make the arrest. Fridley v. Horrighs, 291 F.3d 867 (6th Cir. 2002). For Trobaugh, that would require showing that the arrest warrant was invalid, since a valid arrest warrant is normally a complete defense to a federal constitutional claim for false arrest.[3] Voyticky v. Vill. of Timberlake, 412 F.3d 669, 677 (6th Cir. 2005).

Trobaugh has not made this showing. Based on the record before the Court, Trobaugh was arrested pursuant to a lawfully-issued bench warrant. And an "arrest warrant[] in the hands of a police officer, unless facially invalid, [is] presumed valid," Fettes v. Hendershot, 375 Fed. App'x 528, 532 (6th Cir. 2010). Since Trobaugh never offered any evidence to dispute the warrant's validity, he cannot make out a constitutional claim for false arrest. Terrell v. City of Cleveland, 1987 WL 37477, at *2 (6th Cir. May 22, 1987) ("Plaintiff has not alleged a deficiency in the warrant for his arrest, and a facially valid warrant prevents [the plaintiff] from meeting the threshold requirement to prove a constitutional violation."); see also Thurmond v. Cty. of Wayne, 447 Fed. App'x 643, 648–49 (6th Cir. 2011) (finding that, when plaintiff was arrested pursuant to a facially valid warrant and did not challenge the facial validity of that warrant, plaintiff's arrest did not violate the Fourth Amendment's warrant requirement).

Trobaugh has failed to show a constitutional violation, so Defendants are entitled to qualified immunity on the false-arrest claim.

---

[3] A facially-valid arrest warrant does not merit summary judgment in a § 1983 action if evidence suggests that a defendant intentionally misled or intentionally omitted information at a probable cause hearing. See Mays v. City of Dayton, 134 F.3d 809, 816 (6th Cir. 1998). In this case, however, there was no probable cause hearing. And Trobaugh never offers evidence of any impropriety on the part of the General Sessions Court judge who issued the bench warrant in 2008.

**B. Trobaugh's Detention**

Trobaugh claims that his detention amounted to "summary punishment without due process of law," particularly since he told custodial officers that he had done nothing wrong. (Docket No. 1, pp. 7–8.) Once again, Trobaugh offers no evidence to support this claim.

This claim is weak from the outset. Trobaugh was detained after a December 30, 2008 bench warrant appeared on an NCIC database; that warrant—as discussed above—was facially valid. It is well settled that mistaken detention pursuant to a facially-valid arrest warrant does not automatically violate the Due Process Clause. Baker v. McCollan, 443 U.S. 137, 145–46 (1979) (rejecting § 1983 claim of a plaintiff who was mistakenly detained on a valid warrant). And repeated protests of innocence are normally irrelevant to a due-process inquiry. After all, a "sheriff executing an arrest warrant is [not] required to investigate independently every claim of innocence," nor are custodial officers "required by the Constitution to provide an error-free investigation of such a claim." Id. at 145 (noting that officers are not obligated to heed a detainee's "repeated protests of innocence"); Patterson v. New York, 432 U.S. 197, 208 (1977) ("Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.").

Nevertheless, in rare cases, mistaken detention can be outrageous enough to amount to a due-process violation. Id. (noting that extended mistaken detention "will after the lapse of a certain amount of time deprive the accused of" his constitutional due process rights). Such cases usually involve fairly egregious facts. For instance, in Gray v. Cuyahoga County Sheriff's Department, 150 F.3d 579, 582–83 (6th Cir. 1998), the Sixth Circuit reversed a grant of summary judgment to a sheriff after the plaintiff presented evidence that he was detained for

forty-one days even though the deputies had a photo of the person listed on the warrant; the Court noted that the photo "bore virtually no resemblance [to the plaintiff]."

Trobaugh's detention fails to sink to such depths. Unlike the plaintiff in Gray, Trobaugh was the person identified on the arrest warrant. Id. And the deputies had no reason to believe that Trobaugh's arrest was somehow improper. Cf. Johnson v. Miller, 680 F.2d 39, 42 (7th Cir. 1982) (declining to find constitutional violation when officers mistakenly detained a five-foot-five white woman even though they knew the person listed on the warrant was African-American and five-foot-seven). Moreover, Trobaugh's detention was very brief: he was arrested at 10:16 a.m. on February 17, 2014, and released at 1:07 p.m. the same day. (Docket No. 25, p. 1; Docket No. 31, p. 3.) Compared to similar cases, Trobaugh's three-hour detention was hardly so long as to affect his due-process rights. Thurmond, 447 Fed. App'x at 652 (finding no due-process violation when plaintiff was mistakenly detained overnight); Davis v. City of Cincinnati, 2001 WL 700833, at *1 (6th Cir. June 12, 2001) (finding no due-process violation when plaintiff was mistakenly detained for a full day).

Trobaugh has failed to show that his detention amounted to a constitutional violation. Defendants are entitled to qualified immunity on this claim.

### C. Denial of Medical Treatment

Finally, Trobaugh alleges that Defendants "operated to violate [his] right to receive adequate medical care while incarcerated." (Docket No. 10, pp. 9–10.) Specifically, he claims that he needs to take anxiety medication four times daily and arthritis medication every four hours; Defendants, however, did not "allow him to have [that] medication." (Docket No. 1, p. 5.)

7

Denial of medical attention amounts to a constitutional violation when jail officials are so deliberately indifferent to the serious medical needs of a prisoner as to "unnecessarily and wantonly inflict pain." Horn v. Madison Cty. Fiscal Court, 22 F.2d 653, 660 (6th Cir. 1994).[4] In Farmer v. Brennan, 511 U.S. 825, 834 (1994), the Supreme Court established a two-part test, with an objective and a subjective prong, to determine if a prisoner's right to medical care has been violated. The objective prong requires the prisoner's deprivation to be "sufficiently serious" in that an official's act or omission "must result in the denial of the minimal civilized measure of necessities." Id. at 834. The subjective prong requires a plaintiff to show that the jailers had a "sufficiently culpable state of mind." Napier v. Madison Cty., Ky., 238 F.3d 739, 742 (6th Cir. 2001).

In their summary-judgment briefs, Defendants argue that Trobaugh has not met this standard. Specifically, they contend that Trobaugh was required to offer "verifying medical evidence" to show "the detrimental effect of the delay or refusal in medical treatment." (Docket No. 30, p. 12.) Since Trobaugh has not made such a showing, they argue, his claim fails.

The Court agrees. In Cain v. Irvin, 286 Fed. App'x 920, 927 (6th Cir. 2008), the Sixth Circuit elaborated on the Farmer test, explaining the circumstances in which a plaintiff must offer medical evidence. Cain held that a court should first determine if an injury was "obvious"—if that injury "was diagnosed by a physician as mandating treatment" or so unmistakable that "even a layperson would easily recognize the necessity for a doctor's attention." Id. If the injury was obvious, the court should determine whether the delay in securing care was reasonable. Id. But if that injury was not obvious—or if the injury was

---

[4]The Court notes that the cited cases discussing denial-of-medical-treatment claims concern convicted prisoners, not pretrial detainees. But pretrial detainees retain at least the same constitutional rights as convicted prisoners, so the principles from those cases apply to Trobaugh's detention. Bell v. Wolfish, 441 U.S. 520, 545 (1979).

8

relatively minor—a plaintiff must provide medical evidence demonstrating that the delay in treatment resulted in additional injury. Id.

Trobaugh has not offered any proof at all, so it is difficult to say what, exactly, his medical issues are. But even if the Court were to assume that the Complaint accurately describes his medical condition, that condition would not be "obvious" under the Sixth Circuit's definition.

Trobaugh's medical condition did not produce any visible sign of distress. Such a medical condition may still be "obvious" to an observer. See, e.g., Cain, 286 F. App'x at 927 ("This [Farmer / Napier] test does not address whether the injury is merely observable to bystanders."); Blackmore v. Kalamazoo Cty., 390 F.3d 890, 897–98 (6th Cir 2004) (finding that a plaintiff's severe appendicitis, though not visible to the naked eye, still satisfied the objective requirement of a "sufficiently serious" medical need under Farmer and Napier). But in cases where plaintiffs show no visible symptoms, the Sixth Circuit has drawn a distinction between a medical condition that "concerns immediate threats to an inmates life"—such as a heart attack or diabetic shock—and one that involves "chronic symptoms," like those described by Trobaugh. Mabry v. Antonini, 289 F. App'x 895, 902 (6th Cir. 2008), Garretson Cty. v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir 2005). Conditions that involve immediate threats to a prisoner's life are "obvious" under Cain; those involving only chronic pain are not. Compare Mabry, 289 F. App'x at 902 (finding that a plaintiff 's chronic neurosarcoidosis symptoms were not "obvious"), with City of Madison Heights, 407 F.3d at 797 (finding that a diabetic plaintiff who needed regular insulin injections satisfied the objective requirement of a "sufficiently serious" medical need).

Based on the undisputed facts, Trobaugh never showed any signs of an "immediate threat to [his] life." Mabry, 289 F. App'x at 902. He never said that he was in pain or that he needed

treatment during his arrest or while he was held by Overton County deputies. (Docket No. 25, pp. 5–6.) Nor did he give any indication that he needed treatment while he was held by Smith County deputies. (Docket No. 31.) And if Trobaugh was in any discomfort, that discomfort was not so severe that a layperson could easily see that he needed medical attention. Thus, his medical condition was not "obvious" under the Sixth Circuit's test. See Cain, 286 Fed. App'x at 927.

Since Trobaugh did not have an "obvious" medical condition, he was required to offer proof that the delay in care—here, his inability to take arthritis and anxiety medications for about three hours—led to an additional injury. He did not do so. Accordingly, he has not shown a constitutional violation, and Defendants are entitled to qualified immunity on the denial-of-medical-treatment claim.

**II. State-Law Claims**

Trobaugh alleges six state-law tort claims: false arrest, false imprisonment, malicious prosecution, assault, battery, and negligence. (Docket No. 1, pp. 13–15.) He also brings a claim for recovery pursuant to § 8-8-302 of the Tennessee Code, which allows a plaintiff to sue a county when that county's sheriffs or deputies commit a tort. (Docket No. 1, pp. 15–16.) Defendants move for summary judgment on all seven state-law claims.

**A. False Arrest, False Imprisonment, and Malicious Prosecution**

Plaintiff alleges that his February 17, 2014 arrest was "an unlawful restraint . . . imposed on [his] liberty," constituting false arrest. (Docket No. 1, pp. 13–15.) He also alleges that his detention in the Overton and Smith County Jails was "unlawful and without just cause," was carried out "without probable cause and with malice," and amounted to false imprisonment and malicious prosecution. (Docket No. 1, pp. 14, 15.) In their summary-judgment Motions,

Defendants note that Trobaugh's arrest and detention were carried out pursuant to a facially-valid warrant; as a result, they argue, the arrest and detention were lawful.

The Court agrees with Defendants. Trobaugh's false-arrest and false-imprisonment claims require him to show that Defendants were acting unlawfully. See, e.g., Cunningham v. Sisk, 2003 WL 23471541, at *18 (E.D. Tenn. Dec. 4, 2003) (noting that, under Tennessee law, both false-arrest and false-imprisonment claims require proof that the arrest or detention was unlawful); Brown v. SCOA Indus., Inc., 741 S.W.2d 916, 918 (Tenn. Ct. App. 1987). A plaintiff therefore must offer some proof that he was arrested or detained without probable cause. Id. Similarly, the absence of probable cause is an essential element of a malicious-prosecution claim. Morrison v. Goodowens, 1994 WL 468038, at *2 (6th Cir. Aug. 29, 1994) ("[D]efendants had probable cause to have plaintiff arrested and cannot therefore be held liable for malicious prosecution."); Brown, 741 S.W.2d at 918 ("Probable cause is an essential element of the plaintiff's [malicious-prosecution] case.").

Defendants have included a copy of a bench warrant for Trobaugh's arrest, issued on December 30, 2008 and signed by an Overton County judge. (See Docket No. 28-1.) This facially-valid warrant provides probable cause, Luna v. White County, 2015 WL 4119766, at *4–6 (Ct. App. Tenn. Jun. 29, 2015), and gives Defendants a complete defense to false-arrest or false-imprisonment claims. See Cunningham, 2003 WL 23471541, at *18.

Trobaugh has offered nothing in response, thus failing to create a factual dispute on a central element of his claims for false arrest, false imprisonment, and malicious prosecution. Summary judgment is appropriate on those claims.

### B. Assault and Battery

Trobaugh also brings claims for assault and battery. He alleges that the Overton County deputies, in arresting him, "attempt[ed] to frighten" him and threaten him with unpermitted touching. (Docket No. 1, p. 14.) He also alleges that the deputies "cause[d] harmful, offensive and unpermitted touching" in arresting and detaining Trobaugh. (Docket No. 1, p. 15.)

In their summary-judgment Motion, Defendants argue that Trobaugh has not shown that there was any type of unpermitted touching—or threats of unpermitted touching—during Trobaugh's arrest or detention. As a result, they conclude, Trobaugh's assault and battery claims fail.

The Court agrees. Under Tennessee law, an assault is "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person." Thompson v. Williamson Cty., Tenn., 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997); Huffman v. State, 292 S.W.2d 738, 742 (1956). A battery is "any intentional, unlawful and harmful (or offensive) contact by one person with the person of another." Raines v. Shoney's, Inc., 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995). Assault and battery claims against police officers require even more. For those claims, a plaintiff must show that "an officer has caused damage by an excessive and unprovoked use of force." Hastings v. City of Lebanon, 2014 WL 2154972, at *3 (M.D. Tenn. May 22, 2014) (citing City of Mason v. Banks, 581 S.W.2d 621, 626 (Tenn. 1979)).

Trobaugh has shown nothing to suggest that the deputies used excessive or unprovoked force. Indeed, the facts seem to show the opposite. The Overton County defendants described Trobaugh as "very cooperative" throughout the arrest and booking process, and point out that they allowed him to wait in the booking area instead of in a jail cell. The same was true for the

Smith County deputies who drove Trobaugh to the County Jail later that day. Indeed, none of the officers appear to have used any force against Trobaugh, let alone force that was excessive or unprovoked.

Without more, Trobaugh has not shown enough to survive summary judgment. Defendants' Motions will be granted on Trobaugh's assault and battery claims.

**C. Negligence**

Trobaugh's negligence claim alleges, in bare terms, that Defendants "owed a duty to protect [Trobaugh]," which they breached, causing him "harm . . . [and] damage." (Docket No. 1, p. 15.) In response, Defendants argue that they are immune from suit on Trobaugh's negligence claim pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA"). They maintain that the TGTLA waives municipal immunity for negligence, which would give the individual officers immunity. See Tenn. Code Ann. § 29-20-310(b) ("No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter.").

Defendants' argument misses the mark. The TGTLA's removal of governmental immunity does not apply to any claim that arises out of a civil rights violation. Tenn. Code Ann. § 29-20-205(2) (retaining governmental immunity when the injury arises out of "civil rights"). See also Campbell v. Anderson Cty., 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) (holding that governmental immunity was not waived because plaintiff's claim was "predicated on the alleged violation of [plaintiff's] civil rights by [an officer]"). And Defendants' alleged negligence arose out of Trobaugh's arrest and detention, which also gave rise to his § 1983 claims; in the Sixth Circuit, this puts that Trobaugh's negligence claim squarely within the "civil rights" exemption to the waiver of governmental immunity. See, e.g., Johnson v. City of Memphis, 617 F.3d 864,

13

872 (6th Cir. 2010) (holding that, when a plaintiff's negligence claim "arises out of the same circumstances giving rise to her civil rights claim under § 1983," the claim "falls within the exception listed in § 29-20-205, and the City retains its immunity"). Since both Counties would retain immunity for Trobaugh's negligence claim, § 29-20-310(b)'s bar against suing individuals does not apply. Vargo v. City of Cleveland, 2014 WL 1745649, at *12 (E.D. Tenn. May 1, 2014). Thus, Trobaugh is free to bring his negligence claim against the sheriffs and deputies in Overton and Smith County.

But Trobaugh has failed to support his claim with any evidence that Defendants were, in fact, negligent. And the undisputed facts discuss only intentional acts—arresting Trobaugh, transporting him, booking him, and detaining him for several hours—all of which also form the basis of Trobaugh's intentional-tort claims against Defendants. Trobaugh's negligence claim cannot rely entirely on those facts, since a negligence claim cannot survive summary judgment when a plaintiff "does not point . . . to any evidence of any particular act of negligence unrelated to the intentional torts of the police officers." Evans v. City of Etowah, 2008 WL 918515, at *10 (E.D. Tenn. Apr. 3, 2008). See also RESTATEMENT (SECOND) OF TORTS § 282 cmt. d (defining negligence as "involv[ing] a risk and not a certainty of invading the interest of another").

Without some showing of negligent behavior separate from the alleged intentionally-tortious conduct, Trobaugh has not met his summary-judgment burden. Defendants are entitled to summary judgment on Trobaugh's negligence claim.

**D. Recovery Under Tenn. Code Ann. § 8-8-301**

Finally, Trobaugh alleges that Smith and Overton Counties are liable for the actions of Defendants under Tenn. Code Ann. §§ 8-8-301 and 302. That statute provides that

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy

appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Tenn. Code Ann. § 8-8-302.

This statute provides for recovery from a county itself, so Trobaugh would only recover if he served Overton and Smith Counties in this action. Under Rule 4(m) of Federal Rules of Civil Procedure, Trobaugh had 90 days after he filed his Complaint to serve the Counties. FED. R. CIV. P. 4(m). The Federal Rules provide that serving a governmental entity entails "delivering a copy of the summons and of the complaint to its chief executive officer" or "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." FED. R. CIV. P. 4(j)(2). And under Tennessee law, proper service on a county requires "delivering a copy of the summons and of the complaint to the chief executive officer of the county, or if absent from the county, to the county attorney if there is one designated; if not, by delivering the copies to the county court clerk." TENN. R. CIV. P. 4.04(7).

Trobaugh filed this suit over a year ago, but he never served the proper Overton or Smith County officials with a summons or complaint. Under Federal Rule 4(m), his claim for recovery under §§ 8-8-301 and 302 should be dismissed with prejudice.[5] FED. R. CIV. P. 4(m).

**III. John and Jane Doe Defendants**

Hopper, Melton, and Agee are entitled to summary judgment on all of Trobaugh's claims. That leaves the remaining unidentified defendants, listed in the Complaint as John Doe and Jane Doe I, II, III, and IV.

---

[5] Rule 4(m) normally calls for dismissal without prejudice. FED. R. CIV. P. 4(m). But as the Court has concluded, none of Trobaugh's claims against the individual defendants would survive summary judgment. Trobaugh would therefore be unable to recover from either County based on those claims, so the claims would be summarily dismissed. Thus, re-filing the § 8-8-301 claim would be a waste of Trobaugh's—and the Court's—time and resources.

15

The court notes that Trobaugh's complaint was filed on January 23, 2015. (Docket No. 1.) Trobaugh has yet to identify or serve any of these unknown defendants. Trobaugh missed the 90-day window for service set out in Rule 4(m) of the Federal Rules of Civil Procedure, so his claims against these defendants should be dismissed.

Normally, the claims would be dismissed without prejudice. See FED. R. CIV. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant."). But if Trobaugh re-filed, the claims would be barred by the applicable statute of limitations. Actions under § 1983 are governed by state statutes of limitations for personal-injury actions, Wilson v. Garcia, 471 U.S. 261, 269 (1985), which is one year under Tennessee law. Tenn. Code Ann. § 28-3-104 (setting out a one-year limitations period, commencing when a cause of action accrues, for personal-injury actions and torts against the person). This one-year statute of limitations also applies to each of Trobaugh's state-law tort claims. See Tenn. Code Ann. § 28-3-104(a)(1)(A) (setting out one-year statute of limitations for false-imprisonment and malicious-prosecution claims); Rembert v. Fishburn, 2015 WL 5842149, at *2 (M.D. Tenn. Oct. 6, 2015) (applying one-year statute of limitations for false-arrest claims); Dunfee v. Finchum, 132 F. Supp. 3d 968, 974 (E.D. Tenn. 2015) (applying one-year statute of limitations for negligence claims); Campbell v. McMinn Cty., 2011 WL 5921431, at *3 (E.D. Tenn. Nov. 28, 2011) (applying one-year statute of limitations for assault and battery claims).

Even if Trobaugh were to re-file his claims against the unknown officers, those claims would clearly be time-barred. Consequently, Trobaugh's claims against the unknown officers will be dismissed with prejudice. Commodore v. Williams, 2014 WL 28833, at *3 (W.D. Tenn. Jan. 2, 2014) (dismissing claims with prejudice when statute of limitations had already passed).

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motions for Summary Judgment (Docket Nos. 27, 30). An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE